# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>SHANE D. REGO,<br><br>             Respondent,<br><br>and<br><br>SUZANNE J. REGO,<br><br>             Appellant. | No. 50920-2-II<br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Suzanne J. Rego appeals from a trial court's order requiring her to make a $10,717 transfer payment to Shane Rego as part of their property settlement in their dissolution action. She argues that (1) the trial court improperly considered as evidence a spreadsheet that Shane[1] submitted with his trial brief and that the trial court's admission and use of the spreadsheet as evidence violated her procedural due process rights; and (2) the trial court incorrectly interpreted the parties' stipulated agreement. Because the record shows that the trial court did not consider the spreadsheet as evidence and the record is inadequate to allow us to review whether the trial court incorrectly interpreted the parties' stipulated agreement, we affirm.

## FACTS

Suzanne and Shane Rego were married in 2007. Shane filed a petition for dissolution of the marriage in 2016.

---

[1] We refer to Suzanne and Shane by their first names to avoid confusion; we intend no disrespect.

In May 2017, Suzanne and Shane entered into a stipulated agreement. CR 2A. The portion

of the stipulated agreement addressing the division of "assets and liabilities" provided:

> The below described allocation of assets and liabilities constitutes a CR[]2A stipulation and agreement. The signatures affixed below acknowledge the agreement made voluntarily by the parties. The parties and their attorneys acknowledge that the agreement shall be enforceable pursuant to CR[]2A and each will take all necessary steps to effectuate the agreement.
>
> The purpose of the agreement is to finalize those issues capable of resolution. The agreement reflects the values and characterization of property. All issues not addressed in the agreement or specifically reserved below shall be resolved at a later date or at trial . . . .
>
> The property awarded to Shane Rego are [sic] as follows
>
> $37,000.00 Edward Jones account – ½ the community share of the account
> $11,427.00 Edward Jones account – Husband's separate property share
> 2004 Escalade (value of $5,700.00)
> 1997 Lexus [sic] – Husband's separate property vehicle
>
> All bank accounts in his name.
>
> The obligations awarded to Shane Rego are as follows
>
> Liability associated with 2004 Escalade $6,643.00
> Bank of America Visa . . . $16,272.00
>
> The property and obligations awarded to Suzanne Rego are as follows:
>
> $37,000 Edward Jones account – ½ the community share of the account
> $ 4,218.00 SERS retirement account.
>
> All bank accounts in her name.

Clerk's Papers (CP) at 70.

Another section of the stipulated agreement addressed the sale of the community real property.[2] This section included the following statement, "The parties agree the remaining funds [from the sale of the real property following a reduction for certain costs] are to be used to equalize the property distribution but do not agree as to the specific allocation of the remaining funds."

On the morning of trial, Shane submitted a trial brief. In this brief, Shane argued that the stipulated agreement required a "transfer payment." Shane also attached to his trial brief a spreadsheet listing the non-real-estate assets and debts of the parties that Shane purported to be a summary of the stipulated agreement:

| ASSETS & DEBTS | Valuation Date | Gross Value | Liens & Encumbrances | NET VALUE | TO WIFE COMM | SEPARAT | TO HUSBAND COMM | SEPARATE |
|---|---|---|---|---|---|---|---|---|
| Lexis | | 2,361 | | 2,361 | | | | 2,361 |
| Escalade | | 5,700 | 6,643 | -943 | | | -943 | |
| Bank of America Visa | | | 16,272 | -16,272 | | | -16,272 | |
| Edward Jones Account | | 85,427 | | 85,427 | 37,000 | | 37,000 | 11,427 |
| Wife's SERS retirement | | 4,218 | | 4,218 | 4,218 | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| | | | | 0 | | | | |
| TOTALS - ALL COLUMNS | | 97,706 | 22,915 | 74,791 | 41,218 | 0 | 19,785 | 13,788 |
| TOTALS - COMMUNITY ONLY | | | | 61,003 | 41,218 | | 19,785 | |
| | | | MARITAL LIEN > | | -10,717 | | 10,717 | |

's percentage (entered by user) 50.0% — Each party's total dollars | 30,502 | 30,502
sband's percentage (automatic) 50.0% — Each party's percentage | 50% | 50%

Reimbursements owed *outside the division of community property*:
Husband owes wife: | 0
Wife owes husband: | 0
FINAL TRANSFER PAYMENT INCL. MARITAL LIEN > | -10,717 | 10,717

CP at 68.

_____

[2] Additional sections of the agreement addressed personal property, child support, and maintenance.

The spreadsheet summarized the distribution of two vehicles, an Edward Jones account, Suzanne's SERS retirement account, and a Bank of America Visa debt as described in the settlement agreement, with the addition of adding a value to the vehicle that was awarded to Shane as his separate property. But the spreadsheet also included a $10,717 "marital lien" against Suzanne, which represented the difference in the value of community property allotted to each party less the credit card debt—a "marital lien" was not specifically mentioned in the settlement agreement. CP at 68 (capitalization altered).

It appears that Shane and Suzanne both testified at trial. But we cannot discuss their testimony or the evidence presented or verify whether the spreadsheet was introduced at trial because only the closing arguments have been transcribed.

In closing argument, Shane's counsel referred to the spreadsheet attached to his trial brief while summarizing the settlement agreement and arguing that a $10,717 transfer payment from Suzanne was required. Shane's counsel noted that the transfer payment would "equalize that piece of the property division." Verbatim Report of Proceedings (VRP) at 3.

Suzanne's counsel objected to the use of the spreadsheet and asked the trial court to look at the settlement agreement rather than the spreadsheet. Suzanne's counsel stated that the first time he had seen the spreadsheet was the day of trial and asserted that the spreadsheet was not correct because it "puts the debt that [Shane] agreed to take, back onto [Suzanne]." VRP at 6-7. Suzanne's counsel further asserted that there had been no testimony about the spreadsheet and that the spreadsheet did not reflect the settlement agreement. Suzanne's counsel also argued that the settlement agreement did not contemplate a "transfer payment." VRP at 7.

After discussion of other matters, the parties discussed whether the settlement agreement had contemplated a transfer payment, as outlined in the spreadsheet, or whether the agreement had been reached in light of the parties' disparate incomes and did not contemplate a transfer payment. The trial court commented, "But, the spreadsheet just reflects part of the deal, it's not the whole picture." VRP at 22. They then discussed whether the spreadsheet allocated half of the credit card debt to Suzanne and, if it did, whether she had agreed to that approach in the settlement agreement. Suzanne's counsel argued that the transfer payment essentially made Suzanne assume half of the credit card debt and that Suzanne had not agreed to that.

The trial court stated that the spreadsheet

ties in to the argument, it's designed to explain the argument, their argument is that, I mean, they don't say it like this, but I think the argument in a nutshell is, look at the disparity here if you want some basis to follow our recommendation as to what you ought to do, factor that disparity into what your decision is.

VRP at 23-24. The trial court continued, "I don't think it's the beginning and end of the analysis is this spreadsheet. In fact, I have not even looked at it until we started to talk." VRP at 24.

Shane's counsel responded, "[T]he spreadsheet is not a binding document. It is simply a convenient summary of what the [settlement] agreement says and the [settlement] agreement also says that the proceeds from the sale are to be used to equalize the property distribution. I think those terms are fairly clear." VRP at 24. Suzanne's counsel disagreed that the settlement agreement's terms were clear.

The trial court responded, "I think I see what [Suzanne's counsel] is saying though, too. I mean, I think he's saying that if you had presented us this spreadsheet like this, we probably wouldn't have agreed to it in this form." VRP at 24-25. Suzanne's counsel agreed. The trial court

stated, "I think I can, you know, take a look at this and come up with something that's fair to both parties." VRP at 25.

In a memorandum opinion, the trial court summarized the property allocation as presented in the settlement agreement and the spreadsheet. But it then stated, "Based on this agreement, [Shane] receives a (net) community property award of $19,785 and [Suzanne] receives a community property award of $41,218. The difference between the two awards is $21,433 and *a marital lien of $10,717 is required to equalize the awards*." CP at 58-59 (emphasis added).

Suzanne moved for reconsideration, arguing that the trial court's decision to enter a martial lien against her (1) violated her right to procedural due process because the spreadsheet was presented for the first time on the day of trial and she was not given an opportunity to respond to the spreadsheet, (2) was improper because the trial court failed to interpret the contract using established rules for contract interpretation, and (3) was improper because the spreadsheet amounted to extrinsic evidence of Shane's subjective intent. The trial court denied Suzanne's motion for reconsideration. Suzanne appeals.

## ANALYSIS

### I. EXTRINSIC EVIDENCE AND DUE PROCESS ISSUES

Suzanne first argues that the trial court erred when it considered the spreadsheet because the spreadsheet was extrinsic evidence of an intent to equalize the property award by splitting the net community property distribution equally. We disagree.

The discussion about the spreadsheet during closing argument demonstrates that the trial court understood the spreadsheet to be a summary of Shane's argument, not evidence of the parties' intent to split the net community property distributions equally. For instance, the trial court expressly stated that the spreadsheet was designed to explain Shane's arguments and that the court intended to examine the case as a whole and reach a conclusion that was fair to both parties. This statement by the court does not suggest that the trial court considered the spreadsheet to be evidence of the parties agreeing to split the net community property distribution equally. Accordingly, this argument fails.

Suzanne further argues that because the spreadsheet was not properly introduced as evidence and was not presented until the day of trial, she never had the opportunity to object to the admission of the spreadsheet as evidence or the ability to present opposing evidence. She asserts that this violated her procedural due process rights. But, as discussed above, the trial court did not consider the spreadsheet as evidence. Accordingly, this argument fails.

II. CONTRACT INTERPRETATION ISSUE

Suzanne next argues that the trial court incorrectly interpreted the settlement agreement when it concluded that the settlement agreement allowed for the marital lien or transfer payment. Suzanne asserts that because the spreadsheet cannot be considered as evidence of the parties' intent when they entered into the agreement and neither party submitted evidence of intent during the trial, the interpretation of the stipulated agreement is a question of law that must be determined by us. The record is inadequate to allow review of this argument.

"The party seeking review has the burden to perfect the record so that, as the reviewing court, we have all relevant evidence before us." *Stiles v. Kearney*, 168 Wn. App. 250, 259, 277

7

P.3d 9 (2012) (citing *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994)). "An insufficient appellate record precludes review of the alleged errors." *Stiles*, 168 Wn. App. at 259 (citing *Bulzomi*, 72 Wn. App. at 525). Although Suzanne asserts that the parties did not address the settlement agreement at trial, the only record of the trial proceedings Suzanne has provided on appeal is a transcript of the closing arguments. We cannot rely solely on Suzanne's assertions in her appellate brief. Without a record of the trial, we cannot address this issue.

### III. APPELLATE ATTORNEY FEES

Shane requests attorney fees and costs under RCW 26.09.140, RAP 14.2, and RAP 18.1.

RAP 18.1(a) allows us to award attorney fees to a party entitled to them under "applicable law." We may award costs to the party that substantially prevails on review. RAP 14.2. We also have the discretion to order a party to pay the other party's attorney fees and costs associated with the appeal of a dissolution action. RCW 26.09.140. In exercising our discretion, we consider the arguable merit of the issues on appeal and the parties' financial resources. *In re Marriage of King*, 66 Wn. App. 134, 139, 831 P.2d 1094 (1992). In order for us to consider their financial resources, both parties must file financial declarations prior to ten days before the date of oral argument. RAP 18.1(c). Because neither party filed an affidavit ten days before this case was considered, we do not consider Shane's request. *In re Marriage of Crosetto*, 82 Wn. App. 545, 565-66, 918 P.2d 954 (1996).

No. 50920-2-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, P.J.

BJORGEN, J.